TOLEDO CONSOLIDATED ST. RY. CO. V. FULLER ET AL. ·

1. PASSENGER RIDING BEYOND DESTINATION—DUTY OF STREET RAILWAY CONTINUES.

   A passenger upon a street railway having ridden beyond the destination for which passage was originally taken, still remains lawfully a passenger and entitled to all the privileges and immunities of a passenger.

2. WHERE INJURIES ARE THE RESULT OF COLLISION, BURDEN OF PROOF IS UPON DEFENDANT.

   A charge in an action for personal injuries resulting from a collision between a street car and railroad train, that it was the duty of the street railway to "carry her safely to her point of destination, and the failure thus to do, put the defendant in the wrong and the burden of proof devolves upon it," is not erroneous under the rules laid down in Iron R. R. v. Mowery, 36 O. S., 418.

3. ACT REQUIRING STREET CARS TO BE STOPPED BEFORE CROSSING RAILROAD TRACKS—CAR AND HORSES ARE ONE.

   Under the act of May, 1891, —— O. L. ——, requiring street cars to come to a full stop not less than ten nor more than fifty feet from steam railroad tracks, the car and the horses, where such power is used, are to be treated as one.

4. NEGLIGENCE—JOINT LIABILITY OF STREET AND STEAM RAILROAD COMPANIES.

   For injuries sustained as a result of a street car being driven upon a steam railroad track, and colliding with a train, where the statute requiring the street car to be stopped is violated, and the gateman, in the employ of the steam railroad company, fails to see an approaching train and fails to lower the gate, both the street railway and the steam railroad companies are liable.

· ERROR to the Court of Common Pleas of Lucas county.

HAYNES, J.

·   This is a petition in error filed for the purpose of reversing the judgment of the court of common pleas, in a case wherein Mrs. Fuller was plaintiff and the plaintiff in error were defendants. The grounds of error are the usual ones, and they are set out in various forms, and need not be here stated.

.   It will be necessary to state this case very briefly, and I will endeavor to do it. Suffice it to say that Mrs. Fuller sets out in her petition that on January 9, 1892, she took passage upon the street railroad cars on Monroe street, to ride along the line of said street railway on Monroe street, to a point near Smead avenue, near which she resided. She sets out that as she arrived near that point she signaled to the conductor to stop the car to allow her to get out, but for some reason the car was not stopped, but proceeded on down to where the street railroad crosses the line of the Lake Shore road, which at that point is used by the Michigan Central Company also, under some arrangement with the Lake Shore Company. She claims that at this point there should have been lowered a gate, which was placed by the railroad company in position to be lowered across the street on the approach of a train ; that at that time there was approaching this crossing a train along the tracks of the Lake Shore road, which train was owned and controlled and operated by the Michigan Central Railway Co. ; that owing to the negligence of the gateman at the crossing, who was in the employ of the Lake Shore &

Michigan Southern Railway Company, the gates were not dropped at the time they should have been.  She claims further that as the car approached the railroad crossing, which car was drawn by horses, that the car was not stopped as by the statute of the state it was required to be, and, as she claims, by common law it was required to be stopped, at a distance of at least ten feet from the railroad track; but that the driver continued right forward, and was passing upon the track without heeding the fact that his conductor had gone forward to give him the necessary signal as to whether he should go forward or not.  That as the car approached the track of the railroad and came to the point where this gate is, the gateman at that time suddenly saw the approaching train which had already come near the crossing; that right at that time he dropped the gate, and as it fell, it hit one, or perhaps both of the horses upon at or near their heads—hit them at any rate—and thereupon the horses sprang suddenly forward, carrying the car upon the track of the railway just at the time that the locomotive approached the point of the crossing, and that at that point the locomotive struck the railway car, moving it somewhat—a distance of perhaps two or three feet.  The movement was thus light, because it was the custom of the railway train to stop at that point, and while it usually ran across the crossing it was in fact stopped just at the point where the locomotive hit the car.  Plaintiff claims that she was sitting in the car yet, as a passenger, and that she heard an alarm, and immediately started to go out of the car, and passed out on the platform, and was on the platform of the street car just as it was hit by the locomotive; that she was thrown to the ground, and in consequence of that that she received severe injuries, of which she complains; that she was bruised upon her body, had a broken rib, and injuries that have disabled her ever since to some extent from working as she had formerly done, and has caused her to suffer pain and perhaps sickness.

Defendants, by proper averments in their answers, take issue with the plaintiff and deny any acts of negligence.

Upon the trial of the case the testimony of the witnesses tended to prove in substance the allegations of plaintiff's petition.  It is claimed, however, by the railway companies, in addition to the matters that I have stated, that as the street car approached the crossing an employe of the railroad company, to-wit, the station agent, or some person connected with the station, who had charge of the delivery of the mail bag to the postoffice clerk upon the train, had passed out to the place where it usually stopped, and that brought him near the line of the crossing, and he saw this car coming onto the track just as he saw the locomotive approaching near the depot.  Thereupon he commenced giving some very vigorous signals, both by calling at the top of his voice and by moving his arm, and otherwise attempting to attract the attention of the driver of the street car, but failed to do so.  The testimony of the gateman tends to show that the train was perhaps fifteen or twenty minutes late; that it came upon the track of the Lake Shore road at a point I think five or six hundred feet north of this crossing, and perhaps more than that; and that his custom was to keep watch, and at the time when it came upon the track of the Lake Shore road, passing off the tracks of the Michigan Central road proper, to lower the gate.  He says upon this day he failed to lower it as usual, for the reason that inasmuch as the train was late, and the time was getting to be between three and four o'clock in the afternoon of a winter's day in January, it became necessary for him to attend to his lamps, which he was in the habit of clean-

ing, repairing, perhaps, and lighting, and setting out at some points along the line of the track there for the purpose of giving light to the employes, and for that reason he didn't see the train until it got within a limited distance; that then he started out to drop the gates, and he saw that the one gate had hit the horse nearest to him, somewhere about the ear, and fearing that if he kept the gate in that position it might injure the driver, who was on the car, he immediately raised it, and the car passed along the track and the collision occurred.

It was contended, or suggested, perhaps, in the argument by plaintiff in error; that, strictly speaking, under the allegations of the petition, the plaintiff was not a passenger upon the street car at the time that the accident occurred. There was some suggestion that she had passed off the car, and if I understood the matter correctly, some suggestion that she had passed beyond the point for which she had taken passage; and for that reason, under the allegations, her passage had terminated. We think, however, under the evidence, that there can be no question but what she was at the time that they arrived at or near the crossing, lawfully a passenger upon the street car, and entitled to all the privileges and immunities of a passenger; and we think, in the light of the testimony, that the jury may well have found that she had not alighted from the car at the time that the collision commenced, and that she was still a passenger, or if she had alighted, she had done it so recently and so immediately in connection with the whole transaction that she was still entitled to the rights of a passenger. There was a lady seated in the car who was reading, and that when the horses started she didn't notice them, and she didn't look at them until the locomotive got very near the car. She then happened to look around, and the locomotive was immediately upon them. She was sitting at the forward end, and she cast her eyes to the rear end of the car, and noticed that all but one man had got out of the car, and she herself started to arise and do the same thing, but before she had scarcely made a movement towards it, the locomotive had struck the car.

There was no argument submitted to us that the verdict was not sustained by sufficient evidence, but the attention of counsel was confined more to the charge of the court. It was very earnestly contended that the charge of the court was erroneous, especially in giving what was known as the second request of the plaintiff. The plaintiff fell into the habit, which is sometimes fallen into by attorneys, of requesting propositions that may be found in the syllabi of some case decided by the Supreme Court, without properly adjusting them to the condition of the case, so that they come before us in somewhat of an awkward manner. The court gave to the jury among others, plaintiff's second request, modified to read as follows:

"It being admitted that the defendant, The Toledo Consolidated Street Railway Company, is a carrier of passengers, if the jury find that on the occasion mentioned in the petition the plaintiff was a passenger of defendant's car, havid paid her fare as stated, it was the duty of the defendant, The Toledo Consolidated Street Railway Company, to carry her safely to her point of destination. The failure thus to do put the defendant, The Toledo Consolidated Street Railway Company, *prima facie* in the wrong, and the burden of proof devolves upon it to show that the injury was the result of an accident, and that it could not have been prevented by the exercise of that reasonable care and skill which prudent men are accustomed to employ under similar circumstances."

It was claimed among other things that in giving this charge, especially in giving the charge that the company was under the obligation to carry her safely to that point, it violated the general rules that govern the conduct and liability of railway companies or common carriers, and really made them the insurer of the safety of the passenger, while they were only bound to use a certain degree of care for the purpose of carrying the passenger safely, or for the protection and care of the passenger, and in that respect it had increased the duty and obligations of the railway company beyond that which the law ordinarily imposes upon them ; and, taken in connection with another charge that I shall read later on, it is claimed that it was virtually a charge to the jury to return a verdict for the plaintiff as against the defendants. We were very much impressed with the arguments of counsel made at the time of the hearing in this court, but our duty has been very much abridged by the decision that was referred to by counsel for plaintiffs in error as well as counsel for defendant in error. Iron R. R. Co. v. Mowery, 36 O. S., 418. In this case, upon an examination of it, we find that the court of common pleas upon the trial in that court, had given to the jury a proposition substantially in the language of the proposition that was given by the court in this case at bar. We have compared them, and they seem to be substantially the same. In that case the plaintiff below had taken passage upon the railroad of the defendant company, and ridden from the city of Ironton to a place called Etna station, and the train, it seems, was stopped on the road on account of some cattle that had strayed upon the track, and as the locomotive again started a coupling broke or gave way, leaving the car in which the plaintiff was riding, standing on the track. In the course of from eight to ten minutes a coal train, belonging to defendant, came up behind and ran into the rear car of the standing cars, causing an injury to the plaintiff. Judge Boynton, in delivering the opinion of the court, says on page 421 :

"This is a petition in error by the plaintiff, to reverse the judgment of the district court for wrongfully affirming the judgment of the court of common pleas, and the judgment of the court of common pleas for alleged error in the charg · of the court to the jury ; and a cross-petition in error by the defendant in error to reverse the finding of the district court that the judgment rendered on the verdict was excessive, and that, consequently, the judgment ought to be reversed, unless he, the defendant in error, would remit the amount of the judgment in excess of $1,500.

"Whether a presumption of negligence arises, in all cases, against a railroad company, from the mere fact that an accident has occurred from which a passenger receives an injury while being carried over the road of the company, is a question not arising in the present case, and therefore is not determined ; but where an injury results to a passenger from a collision of the trains of the company, we have no doubt that a *prima facie* presumption of negligence arises against the company, and that unless the company relieves itself from liability, by showing that the injury did not result from its carelessness, or by showing contributory negligence upon the part of the passenger, judgment should be rendered against it. To this effect the authorities seem uniform.

"We therefore think the court did not err in charging the jury that the burden of proof was on the defendant below, to establish the fact the injury did not result from its negligence."

And the judgment was affirmed. It will be perceived that while the court laid down the doctrine that where the injury results from a collision between the trains of the company, the burden thus is thrown upon the defendant company to show that it had not been guilty of any acts of contributory negligence, or any acts showing negligence on its part; yet while it makes that statement, the charge of the court as given was an universal charge as it was in the case at bar:

"It being admitted that the defendant is a carrier of passengers, that, on the occasion mentioned in the petition, the plaintiff was a passenger on defendant's train, having paid his fare as stated, it was the duty of defendant to carry him safely to the point of his destination without injury."

For one, I should be very much inclined to reverse a case where a charge of that kind was given, even although the facts were such as are set forth in Iron R. R. Co., v. Morey, *supra*, for this reason; that it states an universal proposition, the jury might not properly apply it, if it were not charged in regard to the nature of the rule of law, or the exceptions to it, or the limit put upon it by the Supreme Court in this case. But the Supreme Court, with that charge before it, without anything further, so far as I can see to modify or to qualify that charge in any way, did affirm the judgment of the court of common pleas, because upon the facts of the case, if the rule of law had been stated just in accordance with the facts of the case, the burden of proof would have been shifted upon the defendant. In R. R. Co. v. Walrath, 38 O. S., 462, that case is referred to, but it don't throw a great deal of light upon the first part of the proposition, as to whether that is the univer-al rule. This is a case where a party had taken a berth in a sleeping car and during the evening, while he was sitting in his proper seat, that upon which his berth was to be prepared for the night, the upper portion of the car fell upon his head and injured him seriously. On the trial of that case in the court below, the court had charged the jury that, "A mere statement that a person was injured while riding on a railway, without any statement of the character, manner or circumstances of the injury, does not raise a presumption of negligence on the part of the railway company. But if the character, manner, or circumstances of the injury are also stated, such statement may raise, on the one hand a presumption of such negligence, or, upon the other, a presumption that there was no such negligence. If the plaintiff was in fact injured while sitting in his proper place, by the falling on his head of the upper berth, while said upper berth ought to have remained in place above, such fact raises a presumption in this case a presumption of negligence, for which the defendant is liable." That case was affirmed, and the charge of the court was approved. They refer to the Mowery case, stating that the general question was carefully considered in Iron R. R. Co. v. Mowery, *supra*, and we think the principle of that case sustains the court below in the charge given and in refusing the charge requested.

In Houff v. Austin, 46 O. S., 386, reference is made to the Mowery case by the judge who delivered the opinion, and the broad statement is made there that, "The fact of injury having been suffered by any one while upon a railroad company's train as a passenger should be regarded as *prima facie* evidence of the liability." That I think is not supported by the case of Iron R. R. Co., v. Mowery, *supra*. In this case the question that was before the court was, whether the proof offered in a case where a party was sued for injuries which resulted from the explosion of a

boiler, that the boiler had exploded, made *prima facie* a presumption of negligence on the part of the defendant, the owners of the building in which the boiler was situate, who were operating the boiler. The Supreme Court held that it did not, the statement in the syllabus in Huff v. Austin, *supra*, being as follows : "That in an action for damages, the mere fact of the explosion did not raise a *prima facie* presumption of negligence on the part of defendants." The judge, in delivering the opinion of the Supreme Court, says, on page 390 :

" By reason of reliance for personal safety, of passengers upon the carrier, and of the high degree of care and diligence which the law requires towards those with whom there is a relation of trust and confidence, courts have held that, the fact of injury having been suffered by any one while upon a railroad company's train as a passenger should be regarded as *prima facie* evidence of the liability."

That is a broader statement than that in Iron R. R. Co. v. Mowery, *supra*, warranted.

Another charge that was given was this :

" By the words of the statute, ' From the crossing ' means that the car and the horses are to be treated as one ; and that the cars and the horses as a whole, must be brought to a full stop not less than fifty feet from the railroad track."

The court approved of this request, and that is alleged as a ground of error ; and the contention on the part of the plaintiffs in error here is that under the statute only the car is required to be stopped within the distance named by the statute, to-wit: ten feet from the railroad; and that it does not cover the horses in case of a street railway company which operates its cars by means of horses. The statute that is referred to is the act of May 4, 1891, and it is entitled : " An act to provide for the safety of street cars, crossing one another's tracks, and the tracks of steam railways." The first section provides in regard to street railway crossings where the tracks are at a common grade. The second section provides :

" That whenever the tracks of any street railroads in this state cross the tracks of any steam railway at grade, the street railway company operating said line of cars shall cause their street cars to come to a full stop not nearer than ten feet nor further than fifty feet from the crossing, and before proceeding to cross said steam railway tracks, shall cause some person in their employ to go ahead of said car or cars and ascertain if the way is clear and free from danger for the passage of said street cars, and said street railroad cars shall not proceed to cross until signalled so to do by such person so employed as aforesaid, or said way is clear for their passage over said tracks."

In the third section it provides for penalties against employes who shall violate the provisions of the statute; also provides for a personal liability on the part of said employes ; also provides that " The company in whose employ such person having charge of said car or cars is, as well as the person himself, shall be liable in damages to any person or persons injured in person or property." Then there is a clause here in brackets " Having charge of such car or cars," and then the words " As aforesaid." I think I will leave out the brackets and say "person or property as aforesaid." I don't quite understand what the balance of that means. We have given consideration to this charge and to the arguments of counsel, and I don't know that we have any decisions to guide us in regard to the decision of the question ; but after deliberating upon it, and dis-

·cussing it, and giving it our best judgment, we have come to the conclusion that a fair construction of that statute, taking into consideration the objects and purposes for which it is passed and the consequences that are liable to follow from a disobedience of it, will be that the horses attached should be taken as a part of the carriage, if I may use that word; that is to say, when it speaks of the car, it speaks not only of the car proper but of the whole arrangement by which the car is carried forward—by which the passenger is carried, and by which the results are attained for which the car is intended, to-wit, the carriage of passengers from point to point, and for the protection of passengers. The evil is quite as actual, it seems to us, from driving horses within ten feet of the line of the road as from driving the car itself. It is said of course that the horses might be turned to the right or to the left, and then the cargo that distance; but it seems to us that a broad and fair view of it is to take the whole carriage into consideration—the horses that draw it and the car that carries the passengers—and that the intention of the legislature was that that instrumentality should not be brought within a certain distance of a railroad until the observer was sent ahead from the car and signalled back that the track was clear for the passage of the car; and that for the purpose of preventing any injury by a person carelessly or negligently driving upon a railway track.

This charge having been given, it brings us back to the resolution of the other charge, and to the question whether within the principle of the decision in Iron R. R. Co. v. Mowery, *supra*, error intervened of which the plaintiff in error can avail themselves upon this position in error. By some regulation either of the council of the city or the state authorities, possibly by both, it would seem that a gate is required to be kept by the railroad companies at this crossing, or at any rate it is kept. It is kept for the purpose of preventing persons from driving upon the tracks when trains are approaching, and as a matter of course, for the protection of persons who are passing along the street. The Supreme Court were called upon to pass upon an injury which resulted to a party, and the rights of a person who was driving, and the rights of the railroad company and the liabilities of the railroad company, a short time since in Railway Co. v. Schneider, 45 O. S., 678; and it says, in the third syllabus in the case:

"3. When gatemen are maintained at such crossings, it is their duty to observe the tracks and know when, on account of trains or engines thereon, it becomes dangerous for persons to cross, and when it is so, to close the gates and keep them closed to prevent persons from going upon the tracks so long as the danger continues; and when the tracks are clear, or persons may cross without danger from passing cars and locomotives, then to open the gates and keep them open to enable persons to cross, so long as it is safe for them to do so, but no longer. Persons approaching the crossing or about to cross have the right to presume, in the absence of knowledge to the contrary, that the gatemen are properly discharging their duties, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties. Hence an open gate with the gateman in charge is notice of ·a clear .track and safe crossing, and in the absence of other circumstances, when the gates are open and the gatemen present, it is not negligence in persons approaching the crossing with teams to drive at a trot, or pass on to the

9   Ohio Dec      9

tracks through the open gates without stopping to listen, though the view of the tracks on either side of the crossing is obstructed; nor in such case is their failure, when at a distance of twenty-five feet from the track, to look for locomotives one hundred and fifty feet or more from the crossing, negligence, though they could have been seen.''

As I have stated, as this car approached the crossing the gates were not lowered as soon as they should have been; there was unquestionably a dereliction on the part of the gateman in watching for that train. It was late, and liable to approach at any moment. He was negligent in not seeing it and dropping the gates so as to prevent any person crossing. He says that as he went out there was a car crossed, called a "salt car;'' that is to say, a car that was used by the employees of the road in spreading salt upon the track of the railroad. He says that he commenced to drop the gate as soon as he could after this salt car passed. There is contradictory testimony in relation to the position of that car. So far as the street car is concerned and the driver of it, as the car approached the track the conductor got off the car and started around to the south of the car, as I understand it, that he had got off. The salt car had come up to the double track. He proceeded in that direction in the performance of a duty, and had got up somewhere on the line of the heads of the horses at the time the gates had commenced to fall, but hadn't yet reached the railroad track. The driver was on the front of the car, and it was said by one of the witnesses that he jumped off the car as he saw the gates falling. His own testimony is that he didn't jump off until the horses had jumped past the track, about the time the injury occurred. There is testimony tending to show that the brakes were set upon the car as they were found after the accident, and that they were perhaps set before the car got upon the track. But the testimony all shows that the horses were proceeding and the driver was not stopping them—that is, he did not bring them to a dead stop. There was one thing occurred that was out of the usual and ordinary course, to-wit, this employee of the railway company, who had charge of the mail bags, was making diligent efforts to stop this driver from driving his car upon the railroad track. If I remember right, there was a person from the other side. There was also this statute that prohibited the passing of a car beyond a point within ten feet of the track until the conductor should signal for it to come forward. This statute is passed without any regard to the fact that gates are to be kept at crossings by railway companies. It is a regulation that is quite general, and I believe, by the statutes of the state, is to some extent under the control of the commissioner of railroads. Now then, what is the situation in regard to the charge of the court? We are of opinion that under the situation and the facts of the case as here stated, the driver of the street car driving the car upon the track, as he did, there was negligence on the part of the street railway company such as, under this rule, would cast the burden upon it to show that there was no negligence on its part, or that it had used ordinary care. We have taken into consideration the argument of counsel, the decisions of the Supreme Court and the rules laid down there by them, we have read the case that was cited by counsel from the Washington reports; but we think that the rule that should govern in this case falls within that latter clause of the decision of the Supreme Court in Iron R. R. Co. v. Mowery, *supra*, and in the cases that are there referred to; and the rule is substantially this: That where the negligence occurs, by the collision of the cars, by the breaking

Railway Co. v. Fuller et al.

of machinery, or by any act that is done by the railway company, or by the employees, which has contributed to the injury which is complained of, the burden of proof should be upon the defendant railway company.

Under this view of the case, and under that decision, and the prominence of that decision, and considering the manner in which it was affirmed by the Supreme Court, we do not feel at liberty to reverse this case. We think that if counsel for the railway company seek to challenge that decision, or the results of it, it should be before the tribunal itself which made the decision, and allow them to change or modify it, if they see fit to do so.

Some question was made with regard to the liability of the steam railway company; but under the decision that I have already read, in Railway Co. v. Schneider, *supra*, we do not see how the two companies can escape liability; at least we think the jury were right in holding that they were liable for negligence contributing to this accident.

We, therefore, on the whole view of the case, affirm the judgment of the court of common pleas, but will certify reasonable grounds for taking the case to this court, and the case will be remanded in the usual form.

Plaintiffs in error except.